IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JUDITH BASINGER,       )
                       )
    Plaintiff,         )
                       )
v.                     )   1:10cv666 (LMB/TCB)
                       )
HANCOCK, DANIEL, JOHNSON )
    & NAGLE, P.C.      )
                       )
    Defendant.         )

MEMORANDUM OPINION

Before the Court is Defendant's Motion for Award of Attorney's Fees and Costs [Dkt. No. 28], which seeks an award of $25,650.00 in attorney's fees and $2,586.84 in costs. The plaintiff opposes the motion on the sole ground that attorney's fees and costs should not be awarded. For the following reasons, the defendant's motion will be granted.

I. Background

Plaintiff Judith Basinger was hired as a legal secretary at the Fairfax office of the Hancock, Daniel, Johnson & Nagle, P.C. ("HDJN") law firm in January 2007. On May 30, 2008, Basinger left HDJN to work at another law firm, but she returned to HDJN on June 30, 2008, where she supported three attorneys: Anisa Kelley, Paul Walkinshaw, and Heather Zaug. Basinger's supervisor was Kelley, the senior of the three attorneys. Def.'s Mem. in Supp. of Def.'s Mot. for Summ. J. ¶¶3-8.

Shortly after returning to HDJN, Basinger, a 50-year-old

woman, began engaging in inappropriate behavior towards Walkinshaw, who was then 31 years old, including sending him personal e-mail messages and inviting him to meetings after work hours. For example, on November 24, 2008, Basinger sent an e-mail to Walkinshaw, asking if he wanted "to try and go for a drink next Friday, Dec. 5 after work?" Id. ¶10. On January 23, 2009, Basinger sent an e-mail to Walkinshaw stating "I hope there will be a right time and place that we can get together . . ." Id. at ¶15. Walkinshaw became alarmed by this particular e-mail, forwarding it to Kelley with the explicative: "Dude..." Id. ¶15. Walkinshaw later testified in his deposition that he forwarded that e-mail to alert Kelley to the "escalation" of Basinger's advances. Id. ¶16. On February 3, 2009, Basinger sent an e-mail to Walkinshaw stating, "Can I come in your office and get a hug?" Id. ¶19.

Basinger alleges that Walkinshaw told her, "let's do it," and on the evening of February 17, 2009, she phoned Walkinshaw, asking him what he meant by that statement. Id. ¶21. The phone call startled Walkinshaw, who concluded that Basinger "had to be terminated" because she violated the law firm's sexual harassment policy. Id. ¶¶22-23. Walkinshaw complained to Amy Burke, HDJN's human resources director, about Basinger's conduct in e-mail messages on February 18 and 19, 2009. Decl. of B. Page Gravely, Jr. ¶9. On February 19, 2009, Burke and Michael Olszewski, shareholder and director of HDJN's Fairfax office, investigated

2

Walkinshaw's complaint by, among other tasks, interviewing both Walkinshaw and Basinger. In her interview, Basinger claimed to have e-mail evidence of Walkinshaw's interest in her, but she never provided the e-mail or other corroborating evidence. Id. ¶16. At the same time, Basinger expressly stated that she did not want to allege that Walkinshaw sexually harassed her. Id.

After evaluating the e-mails and reports from the interviews, B. Page Gravely, HDJN's president and managing director, concluded that Basinger had lied about Walkinshaw being the harasser because she failed to produce any e-mails or other corroborating evidence and it was not appropriate for Basinger to continue to work in the Fairfax office. In particular, he was concerned about morale in the Fairfax office given that "Mr. Walkinshaw and senior attorneys in the Fairfax office did not want Mrs. Basinger to return to the Fairfax office." Because Basinger lived near Fredericksburg and had previously worked in Richmond, on February 20, 2009, Gravely offered Basinger a transfer to HDJN's Richmond office. Id. ¶24. Basinger declined the offer on February 23, 2009, and Gravely terminated her employment. Id. ¶¶27-30.

On April 1, 2010, Basinger sued HDJN for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., in the Circuit Court of Fairfax County, alleging that the firm violated two provisions of the statute: the "opposition clause," which prohibits employers from discriminating against

employees who opposed any unlawful employment practice, and the "participation clause," which prohibits employers from discriminating against employees who "participated in any manner in an investigation of the unlawful conduct." 42 U.S.C. § 2000e-3(a). On June 15, 2010, HDJN removed the civil action to this Court. Summary judgment was granted in favor of HDJN on November 22, 2010.

## II. Discussion

A. Entitlement to Attorney's Fees and Costs

An award of attorney's fees and costs is appropriate under Section 706(k) of Title VII, which provides that:

> the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for the costs as same as a private person.

42 U.S.C. § 2000e-5(k). When the prevailing party is a defendant, the district court may award fees and costs "upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978). "[A]ssessment of frivolousness and attorneys' fees are best left to the sound discretion of the trial court after a thorough evaluation of the record and appropriate factfinding." Arnold v. Burger King Corp., 719 F.2d 63, 68 (4th Cir. 1983).

In its summary judgment motion, HDJN overwhelmingly demonstrated that Basinger's complaint was based on a blatant misrepresentation of events, and totally lacking any evidentiary

support.[1] To make out a prima facie claim of retaliation under Title VII, a plaintiff must demonstrate: "(1) that the plaintiff was engaged in protected activity; (2) that the employer acted adversely against the plaintiff; and (3) that the protected activity was causally connected to the adverse action." Francisco v. Verizon South, Inc., 2010 U.S. Dist. LEXIS 124960 (E.D. Va. Nov. 23, 2010). Basinger's evidence failed to make out a prima facie case of retaliation.

Although Basinger has sued under both the opposition and participation clauses, she completely failed to establish that she engaged in a protected activity under either clause. The evidence shows that she did not oppose any unlawful conduct. First, it was Walkinshaw who instigated the investigation, not Basinger. Second, and of most significance, Basinger never complained to her employer that Walkinshaw was sexually harassing her, and she explicitly stated during her interview on February 19, 2009 that she was not alleging that Walkinshaw sexually harassed her. Decl. of B. Page Gravely, Jr. ¶16. In fact, all evidence, other than plaintiff's version of events, points to Basinger as the harasser and Walkinshaw as the harassed.

---

[1] For example, the complaint alleges that the February 19, 2009 meeting was "part of an investigation into whether Mr. Walkinshaw had sexually harassed Ms. Basinger," Compl. at ¶20, when the evidence demonstrated that the opposite is true. The complaint refers to Walkinshaw as Basinger's "supervisor," when in fact Basinger's supervisor was Kelley.

5

As to the claim that she participated in protected activity, Basinger was questioned during the investigation as the possible instigator of the inappropriate behavior, not as a witness. Plaintiff has not cited to any case law supporting such participation as "protected activity."

Basinger also did not demonstrate that HDJN took an adverse action when, rather than firing her, it offered her the transfer to Richmond at the same salary. Although Richmond may be a greater distance from the plaintiff's Stafford County home than Fairfax, driving south into a less densely populated area could well be less burdensome than the commute to northern Virginia.

HDJN argues that "the frivolous nature of Mrs. Basinger's case is demonstrated by the lack of any evidentiary support for her claim, together with the lack of any non-frivolous legal argument in Plaintiff's memorandum filed in opposition to HDJN's motion for summary judgment." Def.'s Mem. in Supp. of its Mot. for an Award of Att'y's Fees and Costs at 5. In response, Basinger offers no case law to support her theory that a suspected harasser who is interviewed during a human resources investigation can claim that she engaged in protected activity under Title VII. Rather, all her opposition does is quote nearly three pages of deposition testimony in an attempt to establish that the meeting also involved an investigation into Walkinshaw's behavior. As in her arguments against summary judgment, Basinger provides no corroboration of

6

this claim. Basinger's brief even quotes Burke's testimony that Basinger's "inappropriate conduct" was the subject of the investigation. Resp. to Def.'s Mot. for an Award of Att'y's Fees and Costs at 2. At most, Basinger's brief demonstrates that after HDJN began investigating Basinger's behavior, Basinger stated that Walkinshaw was "coming on" to her. Id. at 3. The remainder of Basinger's opposition brief discusses the broad scope of Title VII's anti-retaliation provisions, but that legal commentary does nothing to advance her argument that her complaint was not frivolous, given the unique facts discussed above.

The evidence in this record clearly establishes that Basinger's lawsuit was the frivolous, groundless, and unreasonable type that Section 706(k) is intended to discourage. Therefore, attorney's fees and costs will be awarded to HDJN.[2]

B. Calculation of attorney's fees and costs

Although Basinger does not challenge the plaintiff's calculation of attorney's fees and costs, HDJN still bears the burden of demonstrating the reasonableness of the fees and costs it seeks. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). To calculate a reasonable fee, the "most useful starting point" is

---

[2]HDJN argues that as an alternative to awarding attorney's fees and costs under Section 706(k) against the plaintiff, the Court could sanction Basinger's attorney under Fed. R. Civ. P. 11; however plaintiff's counsel correctly responds that he was not provided with the required notice under Rule 11. See Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F. 3d 385 (4th Cir. 2004) (en banc).

the "lodestar" amount, which is determined by multiplying the number of hours reasonably expended by a reasonable hourly rate. Id. at 433. Claimants must submit documentation reflecting "reliable contemporaneous recordation of time spend on legal tasks that are described with reasonable particularity." EEOC v. Nutri/System, Inc., 685 F. Supp. 568, 573 (E.D. Va. 1988).

In the Fourth Circuit, twelve factors, collectively known as the Kimbrell factors, are used to evaluate the reasonableness of an attorney's fee petition. These factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978). After deducting any fees that resulted from time spent on unsuccessful claims, the Court evaluates the "degree of success" enjoyed by the prevailing party and arrives at a final reasonable fee. See Grissom v. The Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008) (internal quotations and citations omitted). Although all factors must be considered, "[t]he district court is not required

8

to engage in a lengthy discussion concerning what portion of the award is attributable to each factor." Arnold, 719 F.2d at 67 n.4.

1. Reasonable hourly rate

HDJN was represented by David R. Simonsen, Jr., who was admitted to the Eastern District of Virginia bar in 1980 and practices primarily employment law. Simonsen charged HDJN an hourly rate of $250.

To prove that its hourly rate is reasonable, HDJN produced an affidavit from Simonsen in which he stated that he typically charges $300 an hour, but he provided a discount to HDJN because an HDJN shareholder and director is a member of his church. Simonsen attested that a $250 hourly rate is "well below the prevailing hourly rates for attorneys of my experience and expertise." Ex. A to Def.'s Mem. in Supp. of its Mot. for an Award of Att'y's Fees and Costs. HDJN also produced an affidavit from Edward Lee Isler, an employment litigator in the Eastern District of Virginia, who avers that Northern Virginia employment litigators with experience similar to Simonsen charge hourly rates greater than $300. Ex. C to Def.'s Mem. in Supp. of its Mot. for an Award of Att'y's Fees and Costs. From the Court's experience with attorney's fee petitions it has independent knowledge that Simonsen's hourly rate is well below the prevailing market rates in the Eastern District of Virginia and more than reasonable given Simonsen's experience.

2. Reasonable Number of Hours Expended

HDJN seeks reimbursement for a total of 102.60 hours expended by Simonsen. No other attorneys or legal staff billed HDJN for their time.

The Court reviewed Simonsen's invoice and considered whether the lodestar should be reduced to account for "excessive, redundant, or unnecessary" hours, Jackson v. Estelle Place, LLC, No. 1:08cv984 (LMB/TRJ), 2009 U.S. Dist. LEXIS 39837, at *4 (E.D. Va. May 8, 2009). Included within the 102.60 hours Simonsen billed were hours spent drafting numerous documents, including HDJN's answer, motion for summary judgment, discovery requests and answers, and the instant motion for attorney's fees and costs. Simonsen also deposed Basinger, prepared four HDJN witnesses for their depositions, attended a pretrial conference with a magistrate judge and argued its summary judgment motion in open court. Isler correctly avers that the invoice reflects "substantial efficiency on the part of Mr. Simonsen in defending this action." Ex. C to Def.'s Mem. in Supp. of its Mot. for an Award of Att'y's Fees and Costs. Accordingly, the lodestar will be calculated based on the 102.60 hours in Simonsen's invoice.

3. Other Kimbrell factors

None of the other Kimbrell factors warrant either an increase or reduction to the attorney's fee award. The questions raised in the lawsuit were standard Title VII claims, which were not

particularly novel or difficult, but the claims required a general background in employment law. Simonsen has been a member of this Court's bar for 30 years, and he is a well-known employment litigator who frequently lectures on employment law issues. As established above, the hourly rate charged in this civil action is well below the customary fee for like work. The Court is unaware of the nature and length of the professional relationship between attorney and client. There is nothing particularly undesirable or desirable about this type of case. The opportunity costs in pursuing the litigation, the attorneys' expectations at the outset of this litigation, the time limitations imposed by the client or circumstances, the amount in controversy, and attorney's fees awards in similar cases also do not weigh on one side or the other. For these reasons, a total attorney's fee award of $25,650.00 is more than reasonable.

C. Costs

HDJN also requests that it be awarded $2,586.84 in costs, and Basinger has not objected to any particular item or calculation. Most of the costs - $2,201.35 - are for transcripts of depositions. Simonsen also paid $350.00 to remove the civil action to federal court and $35.49 for document delivery fees. Accordingly, the Court determines that costs of $2,586.84 are reasonable.

III. Conclusion

For the above reasons, the Court finds that Defendant's Motion for Award of Attorney's Fees and Costs [Dkt. No. 28] should be granted and that $28,236.84 (consisting of $25,650.00 in attorney's fees and $2,586.84 in costs) should be awarded to the defendant. This decision will be reflected in an Order to be issued with this Memorandum Opinion.

Entered this 23rd day of December, 2010.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge